IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

R.S.,[1]

        Plaintiff,

vs.                                    Case No. 18-2575-SAC

COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION,

        Defendant.

## **MEMORANDUM AND ORDER**

On June 30, 2015, plaintiff filed an application for social security disability insurance benefits. Plaintiff alleged a disability onset date of May 26, 2011. The application was denied initially and on reconsideration. An administrative hearing was conducted on July 18, 2017. The administrative law judge (ALJ) considered the evidence and decided on November 8, 2017 that plaintiff was not qualified to receive benefits. This decision has been adopted by defendant. This case is now before the court upon plaintiff's request to reverse and remand the decision to deny plaintiff's application for benefits.

I. STANDARD OF REVIEW

To qualify for disability benefits, a claimant must establish that he or she was "disabled" under the Social Security Act, 42

---

[1] The initials are used to protect privacy interests.

1

U.S.C. § 423(a)(1)(E), during the time when the claimant had "insured status" under the Social Security program. See Potter v. Secretary of Health & Human Services, 905 F.2d 1346, 1347 (10th Cir. 1990); 20 C.F.R. §§ 404.130, 404.131. To be "disabled" means that the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The court must affirm the ALJ's decision if it is supported by substantial evidence and if the ALJ applied the proper legal standards. See Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Wilson v. Astrue, 602 F.3d 1136, 1140 (10th Cir. 2010)(internal quotation marks omitted). "It requires more than a scintilla, but less than a preponderance." Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007). The court must examine the record as a whole, including whatever in the record fairly detracts from the weight of the defendant's decision, and on that basis decide if substantial evidence supports the defendant's decision. Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994) (quoting Casias v. Secretary of Health & Human Services, 933 F.2d 799, 800-01 (10th Cir. 1991)). The court may not reverse the defendant's choice

between two reasonable but conflicting views, even if the court would have made a different choice if the matter were referred to the court de novo. Lax, 489 F.3d at 1084 (quoting Zoltanski v. F.A.A., 372 F.3d 1195, 1200 (10th Cir. 2004)). The court reviews "only the sufficiency of the evidence, not its weight." Oldham v. Astrue, 509 F.3d 1254, 1257 (10th Cir. 2007).

II. THE ALJ'S DECISION (Tr. 11-22).

There is a five-step evaluation process followed in these cases which is described in the ALJ's decision. (Tr. 12-13). First, it is determined whether the claimant is engaging in substantial gainful activity. Second, the ALJ decides whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments which are "severe." At step three, the ALJ decides whether the claimant's impairments or combination of impairments meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Next, the ALJ determines the claimant's residual functional capacity and then decides whether the claimant has the residual functional capacity to perform the requirements of his or her past relevant work. Finally, at the last step of the sequential evaluation process, the ALJ determines whether the claimant is able to do any other work considering his or her residual functional capacity, age, education and work experience.

In steps one through four the burden is on the claimant to prove a disability that prevents performance of past relevant work. Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006). At step five, the burden shifts to the Commissioner to show that there are jobs in the economy with the claimant's residual functional capacity. Id. In this case, the ALJ decided plaintiff's application should be denied at the fourth or fifth step of the evaluation process.

The ALJ made the following specific findings in his decision. First, plaintiff meets the insured status requirements for Social Security benefits through December 31, 2016. Second, plaintiff has not engaged in substantial gainful activity since February 13, 2014.[2] Third, plaintiff has the following severe impairments: arthritis of the right shoulder and obesity. Fourth, plaintiff does not have an impairment or combination of impairments that meet or medically equal the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Fifth, plaintiff has the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. 404.1567(b) in that: she can lift and carry 20 pounds occasionally and 10 pounds frequently; she can stand or walk a total of 6 hours in an 8-hour workday and sit up to 6 hours in an 8-hour workday; she can frequently climb ramps or stairs and

---

[2] This date was used because plaintiff filed a prior application for benefits which was denied on February 12, 2014 and is considered final.

occasionally climb ladders, ropes, or scaffolds; she can frequently stoop, kneel, crouch, and crawl; she can occasionally reach overhead with her dominant right upper extremity; and she can occasionally tolerate exposure to vibration and to unprotected moving mechanical parts or unprotected heights. Finally, the ALJ determined that plaintiff can perform past relevant work as a cake decorator and photography counter worker and other jobs existing in the national economy, such as marker, routing clerk, and photocopy machine operator.

III. ARGUMENTS

    A. Obesity

Plaintiff's first argument is that the ALJ failed to properly consider plaintiff's obesity pursuant to SSR 02-1p and SSR 96-8p in making his decision.[3] The court rejects this argument for the following reasons. First, the ALJ did consider and discuss plaintiff's obesity. He listed plaintiff's height, weight and body mass index as an indicator of obesity. (Tr. 18). He stated that plaintiff's obesity was a severe impairment. (Tr. 13). He also noted the provisions of SSR 02-01p and said that the effects of plaintiff's obesity were considered in determining plaintiff's

---

[3] SSR 02-1P states that defendant will evaluate and explain the effect obesity has on the severity or functional limitations of an impairment and the effect obesity has upon a claimant's ability to physically perform in the work environment. 2002 WL 34686281 *6-7 (9/12/2002). SSR 96-8P provides in part that an RFC assessment must include a discussion of objective medical and other evidence and a discussion of why "reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." 1996 WL 374184 *7 (7/2/1996).

5

RFC. Tr. 18 and Tr. 19 ("The claimant's obese body habitus [and other factors] support the . . . residual functional capacity assessment."). Second, the ALJ considered the opinion of an examining doctor, Dr. Fishman.[4] (Tr. 19). Plaintiff's obesity must have been a factor in his findings. The ALJ considered plaintiff's activities of daily living (Tr. 18), which also must have involved the limitations from obesity. Third, during the administrative hearing, plaintiff did not claim obesity as a disabling factor. (Tr. 118-19); see also Tr. 171, 179. This limits the impact of the alleged error in considering and discussing the obesity factor.

The court finds that these three factors distinguish this case from the case cited by plaintiff, DeWitt v. Astrue, 381 Fed.Appx. 782, 784-86 (10th Cir. 2010)[5] and that the ALJ's approach is similar to that approved by the Tenth Circuit in Smith v. Colvin, 625 Fed.Appx. 896, 899 (10th Cir. 2015); Arles v. Astrue, 438 Fed.Appx. 735, 740 (10th Cir. 2011); see also, Razo v. Colvin, 663 Fed.Appx. 710, 716-17 (10th Cir. 2016); Rose v. Colvin, 634 Fed.Appx. 632, 637 (10th Cir. 2015).

---

[4] The ALJ gave "some weight" to the limitations found by Dr. Fishman which were greater than the limitations determined by the ALJ. (Tr. 19).
[5] In DeWitt, the ALJ the ALJ cited a doctor's opinion in discounting a claimant's obesity when the opinion never discussed the claimant's obesity.

6

B. <u>Wrist pain and migraines</u>

Plaintiff asserts that the ALJ did not properly evaluate the impact of plaintiff's right wrist pain and migraine headaches when calculating plaintiff's RFC. The ALJ did not explicitly discuss these ailments during his step four analysis. But, he stated that he had considered "all symptoms" and the "intensity, persistence, and limiting effects of the . . . symptoms to determine the extent to which they limit [plaintiff's RFC]." (Tr. 16). The Tenth Circuit's practice is to give credence to such comments. <u>Wall</u>, 561 F.3d at 1070. The ALJ also addressed in some detail the evidence regarding plaintiff's right wrist and migraine impairments at Tr. 14 where he determined that neither was "severe." He noted that plaintiff's "hand and wrist pain had no more than a minimal effect on her ability to perform basic work related activities," and that her migraines had been treated with a NSAID for pain control. (Tr. 14).

An ALJ must consider the combined effect of all impairments, severe or non-severe, in deciding a claimant's RFC. <u>Wells v. Colvin</u>, 727 F.3d 1061, 1065 (10th Cir. 2013). Upon a review of the record, the court credits the ALJ's remark that "all symptoms" were considered and finds that plaintiff's wrist pain and migraine headaches were reasonably accounted for in the RFC determination.

7

C. <u>Dr. Fishman and Dr. Sampat</u>

Plaintiff alleges that the denial of benefits should be reversed because the ALJ improperly substituted his own medical expertise for the opinion of Dr. Ira Fishman. Dr. Fishman performed a consultative examination of plaintiff on November 18, 2015. He found:

> This patient relates a history of chronic musculoskeletal pain. The right shoulder examination suggests rotator cuff impingement, and examination of the right hand suggests the possibility of a median neuritis but is not fully conclusive for persistent or recurrent carpal tunnel syndrome. This patient on examination today has evidence of patellofemoral syndrome involving both knees.
>
> This patient will be able to tolerate work activities in the light physical demand category of work on an occasional basis only. She will have to be limited to occasional overhead reaching with the right arm and occasional kneeling, stooping, and squatting. She will also be able to tolerate occasional bending of her neck and back. The physical examination that was completed today did not indicate a specific neurologic or orthopedic reason for her to require use of an assistive device to ambulate.

(Tr. 639-40).

The ALJ gave this opinion "some weight to the limitation to light exertion level work with occasional limitations in postural activity and reaching with her right arm." (Tr. 19). He found that Dr. Fishman's finding that plaintiff was limited to only occasional light work activity was not consistent with the mildly abnormal clinical signs and findings in Dr. Fishman's report and

not consistent with the clinical signs and findings of plaintiff's primary care provider.

The ALJ is required to consider every medical opinion and "discuss the weight he assigns to such opinions." Keyes–Zachary v. Astrue, 695 F.3d 1156, 1161 (10th Cir. 2012). In conducting this evaluation, the ALJ considers the following factors:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

20 C.F.R. §§ 404.1527(c), 416.927(c). But, the ALJ's decision need not include an explicit discussion of each factor. Oldham, 509 F.3d at 1258. Nor is there a requirement of direct correspondence between an RFC finding and a specific medical opinion on functional capacity. See Chapo v. Astrue, 682 F.3d 1285, 1288-89 (10th Cir. 2012). "[T]he ALJ, not a physician, is charged with determining a claimant's RFC from the medical record." Howard v. Barnhart, 379 F.3d 945, 949 (10th Cir.2004). By deciding what weight to give a doctor's opinion, an ALJ does not overstep "'his bounds into the province of medicine.'" Arterberry v. Berryhill, 743 Fed.Appx. 227, 231 n.1 (10th Cir. 2018)(quoting Miller v. Chater, 99 F.3d 972, 977 (10th Cir. 1996)).

9

The ALJ's reasons for giving limited weight to Dr. Fishman's opinion as to functional capacity find support in the record. For instance, Dr. Fishman recorded slight hypesthesia in the right hand; slight antalgic gait; and slight crepitus of both knees. (Tr. 639). It was reasonable to characterize Dr. Fishman's range of motion findings as mildly limited. Other examination findings in the record also could reasonably be construed as inconsistent with Dr. Fishman's conclusions. E.g., Tr. 561, 636, 698. The court finds no error in the ALJ's evaluation of Dr. Fishman's report.

Plaintiff asserts that Dr. Pravin Sampat's report does not deserve substantial weight because he did not examine or treat plaintiff and because his opinions were stale. These arguments do not convince the court to reverse the denial of benefits. The ALJ acknowledged that Dr. Sampat was a consulting source, not an examining source, and he did not adopt Dr. Sampat's conclusion that plaintiff could perform some, but less than a full range, of medium work. He gave only "some weight" to Dr. Sampat's opinion, which he considered generally consistent with the mild clinical signs and findings, but inconsistent with the ongoing treatment plaintiff had received for shoulder and hip pain. (Tr. 18-19).

The ALJ fulfilled his role in weighing the doctors' opinions in this case. The court finds no error which warrants reversing the decision to deny benefits.

D. Conservative treatment history

Plaintiff alleges that the ALJ's decision is unsupported in part because the ALJ improperly considered plaintiff's conservative treatment history in rejecting plaintiff's allegations. Plaintiff asserts that she was unable to afford even some medications and suggests that this may account for her conservative treatment history. She points to a medical record indicating that she was unable to afford Neurontin in June 2013 so a switch was made to Meloxicam. (Tr. 698).

The ALJ did find that plaintiff's conservative treatment history was inconsistent with total physical disability. (Tr. 17-18). He noted that plaintiff has not had surgery (post-2011), physical therapy, injection therapy or taken narcotic pain medications for the joint pain she has suffered.[6] (Tr. 17). The court finds this was a reasonable factor to consider, among others, in deciding whether plaintiff's pain was totally disabling. See Barnhill-Stemley v. Colvin, 607 Fed.Appx. 811, 815 (10th Cir. 2015); Wall, 561 F.3d at 1069. Aside from the example of substituting Meloxicam for Neurontin, plaintiff does not point to evidence of treatments which were recommended to plaintiff but declined because of their cost. This is relevant because two of the factors to be considered when evaluating a failure to pursue

---

[6] According to the ALJ's decision, plaintiff had carpal tunnel release surgery in 1999 and right shoulder surgery in 2009 and 2011. (Tr. 14 and 17).

11

treatment are whether the treatment was prescribed and refused. Thompson v. Sullivan, 987 F.2d 1482, 1490 (10th Cir. 1993).

Under the circumstances presented here, the court finds no error in the ALJ's consideration of plaintiff's conservative treatment history.

### E. Activities of daily living

Plaintiff alleges that the ALJ erred in relying on plaintiff's activities of daily living to discount plaintiff's pain allegations. The ALJ noted in his decision that plaintiff drives short distances, occasionally helps with the dishes, reads books or ebooks on a tablet, performs her personal care independently, does laundry, cooks meals that don't involve too much stirring or standing, does light housework once a week, mows the lawn in 15 to 20 minute increments, attends her daughter's school and sporting events, enjoys camping and fishing when possible, and sits to watch television or movies without significant limits. (Tr. 18). The Tenth Circuit has approved the denial of benefits in similar cases where ALJs considered daily activities to evaluate the credibility of pain testimony. Newbold v. Colvin, 718 F.3d 1257, 1267 (10th Cir. 2013); Wilson, 602 F.3d at 1146. The court recognizes that an ALJ "may not rely on minimal daily activities as substantial evidence that a claimant does not suffer disabling pain." Thompson, 987 F.2d at 1489. Here, the ALJ could reasonably conclude that plaintiff's daily activities were more than

12

"minimal," and consider the daily activities in combination with other factors in determining that plaintiff's pain is not as severe as alleged and to support the ALJ's formulation of plaintiff's RFC. See Valles v. Colvin, 2015 WL 5579573 *5-6 (D.Colo. 9/23/2015).

F. Vocational expert testimony

The vocational expert (VE) testified that one of plaintiff's past jobs "sounded more like a baker helper" which was medium work. (Tr. 130). She testified that plaintiff's past job as cake decorator (DOT # 524.381-010) was light work, and that plaintiff's past job as photography counter worker (DOT # 249.366-010) was light work. The ALJ asked the VE to respond to the following query:

> assume an individual who could occasionally lift up to 20 pounds, frequently lift or carry up to 10 pounds, stand or walk for six hours and sit for six hours over an eight-hour day. Frequently climbing ramps or stairs, occasionally climbing ladders, ropes or scaffolds, frequently stooping, kneeling, crouching and crawling, occasional overhead reaching with the dominant right upper extremity, and can occasionally tolerate exposure to vibration and unprotected moving mechanical parts or unprotected heights. Could such person perform any of [plaintiff's] past work?

(Tr. 130-31). The VE responded that the person could perform the job of photography counter worker and cake decorator as actually performed by plaintiff and as generally performed. (Tr. 131). The VE further testified that the person could also do the jobs of marker (DOT # 209.587-034); routing clerk (DOT # 222.687-022); and

13

photocopy machine operator (DOT # 207.685-014). Id. The VE stated that her testimony was consistent with the Dictionary of Occupational Titles although the limitation as to overhead reach wasn't covered in the DOT and that her testimony in that regard was based upon her years of experience and knowledge in the vocational field. (Tr. 132).

It was not clear whether plaintiff's cake decorating work was combined with work as a baker helper – a medium exertion level job. So, the ALJ determined that plaintiff was capable as performing the job of cake decorator as generally performed and as a photography counter worker as she actually performed it and as it is generally performed. (Tr. 20). He said this finding "is supported by the uncontroverted testimony of the vocational expert." Id.

### 1. Step four

The VE's testimony is relevant to the ALJ's step four analysis where the ALJ is required to make findings regarding: 1) plaintiff's RFC; 2) the physical and mental demands of plaintiff's past relevant work; and 3) whether plaintiff has the ability to meet the physical and mental demands of plaintiff's past relevant work. See Winfrey v. Chater, 92 F.3d 1017, 1023 (10th Cir. 1996).

Plaintiff claims that the ALJ's conclusion that plaintiff could perform past relevant work is flawed because the record does not document the physical and mental demands of plaintiff's past

14

relevant work. The VE testified that the jobs qualified as light work and made reference to the DOT which describes the physical and mental demands of the jobs the VE mentioned. The ALJ adopted the VE's testimony. This is sufficient to document the ALJ's conclusions because "[a]n 'ALJ may rely on information supplied by the VE at step four.'" Doyal v. Barnhart, 331 F.3d 758, 761 (10th Cir. 2003)(quoting Winfrey, 92 F.3d at 1025). It is unnecessary for the ALJ to use the phrase "I find" in making his step four analysis if the substance of the analysis is sufficiently articulated. Id. The court finds that the ALJ sufficiently explained and supported his step four analysis in this case.

2. Step five

Plaintiff argues that the ALJ erred when he failed to resolve an alleged conflict between the VE's testimony and the DOT job descriptions to which she referred in her testimony. The ALJ asked the VE to assume that a person could engage in occasional overhead reaching with her right dominant upper extremity. The DOT job descriptions to which the VE referred (except for the job description for photography counter worker) called for frequent reaching, although the DOT descriptions do not separately classify reaching overhead as a physical criterion.

The court finds that the ALJ did not commit error for two reasons. First, the Tenth Circuit has held in this situation that the VE's testimony did not conflict with the DOT job description.

15

In Segovia v. Astrue, 226 Fed.Appx. 801, 804 (10th Cir. 2007), the court held that where a job characteristics dictionary did not separately classify overhead reaching, but did provide that two positions required "frequent" reaching, there was no conflict when a VE testified that he was aware of the claimant's limitations to "occasional" overhead reaching and that the jobs were open to the claimant. The court stated that the VE's testimony did not "conflict" with the job dictionaries so much as clarify "how their broad categorizations apply to this specific case." Id. This court has applied Segovia in analogous fact situations multiple times. See Bennett v. Berryhill, 2018 WL 6267767 *9 (D.Kan. 11/30/2018); Christie v. Berryhill, 2018 WL 2445032 *5-6 (D.Kan. 5/31/2018); Wickliffe v. Berryhill, 2017 WL 3149354 *6-8 (D.Kan. 7/25/2017); Smith v. Colvin, 2015 WL 4946411 *4 (D.Kan. 8/19/2015).

Second, the ALJ asked the VE if her testimony was consistent with the DOT. She replied that it was, but that her response as to overhead reaching was based upon her years of experience and knowledge because overhead reach is not covered in the DOT. This satisfied the ALJ's obligation to explain a "conflict" between the VE's testimony and the DOT. See Haddock v. Apfel, 196 F.3d 1084, 1091 (10th Cir. 1999).

IV. CONCLUSION

For the above-stated reasons, the court affirms defendant's decision to deny plaintiff's application for social security benefits and shall dismiss this action to reverse the decision.

**IT IS SO ORDERED.**

Dated this 22nd day of April, 2019, at Topeka, Kansas.


s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge